UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS L. PRINCE, JR.,

     *Plaintiff*,

v.                              CASE NO. 2:13–CV–12055–AJT–PTM

COMMISSIONER OF               DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,            MAGISTRATE JUDGE PATRICIA T. MORRIS

     *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB").

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14.)

Plaintiff Thomas L. Prince, Jr. was 44 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 16, 38.) From 1990 until 2003, Plaintiff worked in various jobs at Mitchell Corporation of Owosso, Northland I.G.A. Foodliner, J.D.M. & Associates, C.G.G. Veritas Services, Mike's Body Shop, and S. & S. Collision. (Tr. 141-43.) Over the next seven years he managed an automobile repair business. (*Id.*) Plaintiff filed the present claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.*, on September 30, 2010, alleging that he became unable to work on April 14, 2010.[2] (Tr. at 12, 126-32.) The state disability determination service ("DDS") denied the claim at the initial administrative stages, finding that Plaintiff's "condition is not severe enough to keep [him] from working." (Tr. at 74-81.) Plaintiff then requested an administrative hearing providing *de novo* consideration of the application for benefits. (Tr. at 86-87.) Administrative Law Judge ("ALJ") Jennifer Inouye held the hearing on February 16, 2012. (Tr. at 33-73.) The ALJ's decision on March 2, 2012 held that Plaintiff was not disabled. (Tr. at 12.) On March 21, 2012, Plaintiff requested a review of this decision. (Tr. at 5-6.)

The ALJ's decision became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 26, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On May 9, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2] Plaintiff's initial claim form requested benefits under Title II and Part A of Title XVIII, (Tr. at 126), while his appointment of representative form stated claims under Title II and Title XVI. (Tr. at 32.) The initial determination, (Tr. at 74), and administrative law judge's decision, (Tr. at 12), only considered the Title II claim.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the Social Security Agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et*

*seq*., and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 14, 2010, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's degenerative disc disease, chronic anemia, and chronic obstructive pulmonary disease were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-15.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 18.) The ALJ also found that Plaintiff was 42 years old on the alleged disability onset date, which put him in the "younger individual age 18-49" category

7

under 20 C.F.R. § 404.1563. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 14-17.) Therefore, the ALJ held that Plaintiff was not disabled. (Tr. at 17-18.)

**E.    Administrative Record**

The relevant medical evidence contained in the administrative record indicates that Plaintiff sought treatment from Dr. Joseph Hough in August, 2010 to discover the source of his back pain. (Tr. at 248.) Dr. Hough ordered an MRI of the lower thoracic and lumbar spine, which revealed "a disc bulge with impingement on the thecal sac at L2-3," a herniated disk at L5-S1 with "less impingement," and "degenerative disk disease at all levels." (Tr. at 247.) Dr. Hough's medical report stated that Plaintiff's pain level was in the "7-8/10 range, down from [the] 8-9/10 range" but not a significant improvement from earlier in the month. (*Id.*) The report also indicated that Plaintiff's back showed "moderate lumbosacral tenderness and spasm," and that he had "decreased forward flexion." (*Id.*) Additionally, Dr. Hough noted that Plaintiff took Flexeril, Motrin, and tramadol. (*Id.*) The report concluded with a diagnosis of "[s]evere back pain with [a] herniated disk at L2-3 level and left leg sciatica," and recommended possible neurosurgical treatment. (*Id.*)

Plaintiff pursued the recommendation in September, 2010, seeing Dr. E. Malcolm Field for a neurological evaluation. (Tr. at 240.) During the examination, Plaintiff experienced discomfort when walking on his toes and heels, and even greater discomfort during spine extensions. (*Id.*) Dr. Field estimated that Plaintiff could walk "a couple blocks nonstop," and determined that his reflexes, motor skills, and senses were normal. (Tr. at 240-41.) Diagnostic images showed "very significant disk degeneration at the L4-5 level with narrowing at L5-S1,"

8

"a little bit" of narrowing at L3-4, and "significant joint degeneration with edema in the bone." (Tr. at 241.) Dr. Field ordered a bone scan to confirm his belief that the inflammatory changes in Plaintiff's back resulted from disk degeneration. (*Id.*)

Plaintiff next returned to Dr. Hough in December, 2010, complaining of fatigue and persistent back pain. (Tr. at 246.) Dr. Hough associated the fatigue with Plaintiff's recent anemia diagnosis. (*Id.*) The back pain continued despite Plaintiff's efforts to relieve it with Vicodin. (*Id.*) Dr. Hough declined Plaintiff's request to consider methadone or OxyContin and offered him tramadol instead of Vicodin. (*Id.*) The consultation ended with Dr. Hough referring Plaintiff to a pain clinic for help with pain management. (*Id.*)

Plaintiff complied with the recommendation and consulted with Dr. Larisa Bruma, a pain management specialist, on January 20, 2011. (Tr. at 273.) He reported that the back pain began "more than ten years ago," and that sitting for five minutes, walking 100 feet, bending, squatting, and other daily activities increased the pain. (*Id.*) He also informed Dr. Bruma that medication and heat treatment helped, and listed his medications: Motrin, Flexeril, Vicodin,[3] and tramadol. (Tr. at 274.) The physical inspection revealed thoracic scoliosis, mild upper thoracic kyphosis, cervical spondylosis, diffuse tender points above and below the waist, a positive facet loading test, and decreased lower left leg and foot sensation. (*Id.*) Dr. Bruma determined that Plaintiff "can walk with a normal stance swing as well as base of support," but had limited ranges of cervical spine motion and discomfort upon trunk flexion and extension. (*Id.*) She prescribed Flexeril, Ambien, methadone, Neurontin, Motrin, and Colace, and

---

[3]It is unclear whether he included Vicodin as a current medication or merely mentioned that it made him "goofy." (Tr. at 273.) Dr. Bruma did not write down the dosage, suggesting he did not state it was a current medication. But Dr. Bruma nonetheless added it to the "Medications" portion of her report. (*Id.*)

suggested that Plaintiff obtain a TENS unit, schedule electrodiagnostic testing, and begin physical therapy. (*Id.*)

On January 27, 2011, Plaintiff visited both Dr. Bruma and Dr. Hough.  He informed Dr. Bruma that the medication, heat treatments, and massages reduced the pain by 50 percent despite the occasional eruption of discomfort. (Tr. at 271.) Dr. Bruma reviewed the MRI taken the prior year and noted disc protrusion at L2-3 that impinged the left L3 nerve root. (*Id.*) She reaffirmed her previous recommendations and added that Plaintiff should receive an epidural steroid injection and a TLSO back brace. (Tr. at 272.) The visit to Dr. Hough addressed Plaintiff's chest pain and shortness of breath on exertion, coldness in the hands and feet, dizziness, and extreme fatigue. (Tr. at 245.) Dr. Hough noted that Plaintiff smokes one pack of cigarettes or more each day. (*Id.*) Plaintiff received a referral to a heart specialist for a cardiology evaluation and stress EKG. (*Id.*)

Following up on Dr. Hough's referral, Plaintiff saw Dr. J. Miles McClure II on February 21, 2011. (Tr. at 276.) Plaintiff described his chest discomfort, shortness of breath, cold hands and feet, family history of heart disease, and his habit of smoking one-and-a-half packs of cigarettes per day. (*Id.*) Dr. McClure concluded that Plaintiff had new onset angina, probable coronary disease, obstructive pulmonary disease, and dyslipidemia. (Tr. at 277.) He prescribed heart medications and an anti-smoking medication. (*Id.*)

Plaintiff consulted with Dr. Richard Black, D.O., on February 26, 2011. (Tr. at 264.) After reviewing the MRI from the previous year, Dr. Black felt the results were consistent "with the presence of degenerative arthropathy. (*Id.*) In his Disability Report-Appeal form, Plaintiff indicated that he saw "Dr. Kurt" on May 11, 2011 for an "injection." (Tr. at 202.) However, no records from that visit or any other visits to Dr. Kurt appear in the record.

Dr. Bruma performed a nerve conduction study on Plaintiff on July 6, 2011. (Tr. at 259.) The results were "suggestive of bilateral L5-S1 radiculopathy with active denervation suggestive of flare up of radiculopathy." (Tr. at 260.) Dr. Bruma reiterated her previous recommendations that Plaintiff continue physical therapy, continue taking methadone, consider a TENS unit, and consult a pain clinic. (Tr. at 260, 272.)

Plaintiff returned to Dr. Bruma for a followup visit on August 4, 2011. (Tr. at 267.) He stated that his pain remained "about the same 6/10 on a visual analog scale" and denied any new numbness, weakness, or balance difficulties. (Tr. at 267, 268.) Dr. Bruma noted that Plaintiff felt better after he began using the TENS unit and continued with physical therapy, heat treatments, and various medications. (Tr. at 268.) The physical examination uncovered the persisting tender points around the waist, mild upper thoracic kyphosis, limited range of cervical and throacic spine motion, positive facet loading test, right knee crepitus, and decreased sensation to light touch on the lower left leg. (Tr. at 267.) Dr. Bruma increased his methadone dosage and added trazodone and Cymbalta to his regimen to address sleep and depression issues. (*Id.*)

Plaintiff's next treatment was with Dr. Bruma on December 8, 2011. (Tr. at 265.) Plaintiff reported mild improvement, stating his pain level remained steady that day at 4/10 on a visual analog scale, but that his program of medications, TENS, traction, heat, and massage decreased his pain. (Tr. at 265, 267.)

The final health assessment placed in the record was made by Barbara Rounds, an occupational therapist who saw Plaintiff on January 30, 2012. (Tr. at 287-94.) Plaintiff described his medical history and the pain in his back, neck, shoulders, and legs. (Tr. at 287.) He also stated that the physical therapy and "pain injections" failed to provide prolonged relief. (*Id.*) He then estimated that he could sit for 45 minutes, stand for one minute without support and ten minutes with support, and lift eight pounds at

11

the waist and no weight below the waist. (Tr. at 288.) He further informed Ms. Rounds that he maintained a sedentary lifestyle, but was able to perform self-care activities. (*Id.*)

Ms. Rounds then made the following observations during the physical examination: Plaintiff walked without assistance devices but was slow and slightly antalgic; he had rounded posture and shifted frequently when seated; he used supports to help him as he rose from a seated position; his thoraco-lumbar spine appeared to have a slight curvature; he had "moderate mobility deficits in all planes of cervical movement"; and he had normal strength except in his left shoulder and hip. (Tr. at 289.) During the functional assessment test Plaintiff: sat for 40 minutes; stood for 3 minutes; walked 500 feet; reached forward for 3 minutes; lifted and carried 10 pounds; climbed 24 steps; and exerted 40 pounds of push/pull force. (Tr. at 290-91.) Plaintiff completed these tasks with varying degrees of pain, and Ms. Rounds decided to skip a few other tests due to safety concerns. (*Id.*) He reported moderate overall fatigue and an "8/10" pain level at the end of the examination. (Tr. at 291.)

Ms. Rounds concluded that Plaintiff functioned at a level lower than sedentary work and should not work full-time. (Tr. at 292.) However, she then opined that if he worked full-time (40 hours per week), he would have "serious limitations as to pace and concentration [and would] need a sit-stand-rest option." (*Id.*) She then provided a form listing other functional limitations: he could occasionally sit, reach forward, reach overhead with his right arm, and push or pull forty pounds; he could rarely (five percent of the time) stand, walk, climb stairs, bend or stoop, carry ten pounds, and lift ten pounds at waist level; and he could never squat, climb a ladder, reach overhead with his left arm, and lift weight from the floor to his waist or above his waist. (Tr. at 293.) Dr. Hough signed this form two days later. (Tr. at 294.)

At the administrative hearing, Plaintiff testified about his daily activities. (Tr. at 38-62.) During the hearing, he stated that: he was able to complete his physical therapy exercises everyday and handle his personal care, but sometimes needed help putting on his socks; he occasionally walked, cooked,

and went shopping; he was not a frequent reader and he did not drive, do household work, or fish; and he had handled all management responsibilities at his mother-in-law's automobile repair business, which he managed from 2003 until it burned down in 2010. (Tr. at 40, 41, 43, 49, 50, 53-54, 57, 58, 59.)[4] He also reported numbness in his right hand and that the medications and treatments lowered his overall pain level. (Tr. at 51, 56, 60.)

The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background who:

> could perform light work with a sit-stand option at will. This individual can only do pushing and pulling with the lower extremities on an occasional basis and within the aforementioned weight restriction. I'm going to reduce the right gross and fine manipulation . . . on the right side to a frequent basis.
>
> Occasional postural activities, but no climbing of ladders, ropes or scaffolds, avoid concentrated exposure to vibrations, avoid concentrated exposure to hazards and unskilled work.

(Tr. at 65-66.) The VE responded that the hypothetical person could perform the light, unskilled jobs of bus monitor (16,690 nationally and 440 in Michigan), ticket taker (46,073 nationally and 1,130 in Michigan), and parking lot attendant (70,600 nationally and 1,400 in Michigan). (Tr. at 66).

The ALJ then posed additional scenarios to the VE. The second hypothetical took all of the limitations and assumptions from the first, but limited the exertional level to a maximum of sedentary. (*Id.*) The VE replied that a person with these restrictions could work in the sedentary, unskilled jobs of surveillance monitor (19,690 nationally and 530 in Michigan), call-out operator (14,000

---

[4] In the Disability Determination Explanation, which provided the initial denial of benefits on March 18, 2011, Mathew Branch, the Single Decisionmaker ("SDM") noted that Plaintiff was "able to shop, drive" and he "reads, watches TV, plays music, fishes, and visits with family." (Tr. at 76.) The source of this information is unclear. The SDM reported receiving a Work History Report and a Function Report from Plaintiff. (Tr. at 75.) These correspond to reports included in the Record. (Tr. at 151-57, 166-80.) The SDM also documented an unidentified submission of evidence from Plaintiff, (Tr. at 75), which might represent the Disability Report filed by Plaintiff. (Tr. at 158-65.) In any case, none of these sources, or any other evidence in the record, confirms this list of daily activities.

nationally and 250 in Michigan), and information clerk (7,000 nationally and 200 in Michigan). (Tr. at 67.) The third hypothetical asked whether jobs were available for a person with Plaintiff's background who needed "to lie down in one-hour increments . . . at least three times during the eight-hour workday." (*Id.*) The VE reported that no jobs fit these requirements. (*Id.*)

The fourth hypothetical asked whether jobs were available for a person with Plaintiff's background who

> can sit for 45 minutes at a time, stand for 1 minute at a time, stand for 10 minutes with support . . . putting arms or something on a desk table, chair, cane, can walk for 5 minutes at a time and 10 minutes, again . . . with an assistive device. This would be within the sedentary range.
>
> This individual can only lift eight pounds at waist level, but no lifting below waist level.

(Tr. at 67-68.) The VE stated that the same jobs listed in hypothetical two (surveillance monitor, call-out operator, and information clerk) applied to the fourth hypothetical as well. (Tr. at 68.) The ALJ then added to this scenario the condition that the individual work only four hours per day. (*Id.*) No jobs conformed to these circumstances. (*Id.*) Finally, the ALJ inquired into level of productivity and attendance needed to retain a job, which the VE gauged to be less than ten percent of work-time off-task and less than two absences per month respectively. (Tr. at 68-69.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 15.)

> Light work involves lifting no more than 20 pounds at a time and frequent lifting of objects weighing up to 10 pounds. Even though the weight lifted may be very

14

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The additional limiting conditions the ALJ placed on this description included that Plaintiff: "could occasionally push and/or pull with the lower extremities. . . . would require a sit-stand option at will. . . . could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs but never climb ladders, ropes, or scaffolds. . . . should avoid concentrated exposure to vibrations and hazards. . . . [and] could perform unskilled work." (Tr. at 15.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2.   Substantial Evidence

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff lays out two arguments he believes each merit remand. (Doc. 13.) His first argument jumbles together various lines of attack on the ALJ's treatment of Ms. Round's report, but in essence it asserts that the ALJ failed to accord proper evidentiary weight

15

to the report. (Doc. 9 at 11-16). The second argument takes aim at the ALJ's credibility

assessment of Plaintiff, pointing out that the ALJ's decision does not reference Plaintiff's work

history. (*id.* at 16-17.) This alleged oversight supposedly contravenes 20 C.F.R. §

404.1529(c)(3) and SSR 96-7p, 1996 WL 374186, at *1, which each mention that a claimant's

work history is a factor in the credibility analysis.

      **a.**      **Opinion of the Occupational Therapist**

      The ALJ must "consider all evidence" in the record when making a disability decision.

42 U.S.C. § 423(d)(5)(B); *accord* 20 C.F.R. § 404.1520(a)(3); *Wyatt*, 974 F.2d at 683. The

regulations carve the evidence into various categories, but the only relevant distinction for

present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. §

404.1513. "Acceptable medical sources" include licensed physicians, licensed or certified

psychologists, licensed optometrists in visual disorder cases, licensed podiatrists in foot and

ankle impairment cases, and qualified speech-language pathologists in speech or language

impairment cases. *Id.* § 404.1513(a). "Other sources" include medical sources who are not

"acceptable" and almost any other individual able to provide relevant evidence. *Id.* §

404.1513(d). There are important differences between the two types of sources. For example,

only "acceptable medical sources" can establish the existence of an impairment and the

"medical opinions" of treating sources, a subset of "acceptable" sources, "may be entitled to

controlling weight." SSR 06-03p, 2006 WL 2329939, at *2.

      Both "acceptable" and non-acceptable sources provide evidence to the Commissioner,

often in the form of opinions "about the nature and severity of an individual's impairment(s),

including symptoms, diagnosis and prognosis, what the individual can still do despite the

impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* § 404.1527(d).

That balancing test requires the agency to consider six factors. *Id.* § 404.1527(c). The first two focus on the nature of the relationship between the claimant and the "acceptable" source, while the next three examine the supportability and consistency of the "medical opinion" and whether the source is a specialist. *Id.* The final factor is open-ended, allowing the Commissioner to consider any other factor the claimant raises. *Id.* The regulations do not prescribe any similar test for opinions from "other sources." SSR 06-03p, 2006 WL 2329939, at *3.

This hole in the regulations left the ALJ's without an explicit framework for analyzing opinions from "other sources." The agency sought to provide clarity in a 2006 Ruling by noting that ALJ's were already required to "consider" these opinions under 42 U.S.C. § 423(d)(5)(B), and suggesting that the balancing factors for "acceptable" sources "can be applied to opinion evidence from 'other sources.'" *Id.* at *2, 6. However, this pronouncement adds less clarity than it would appear at first glance.

The critical question that the Ruling acknowledges, but quickly elides, is not how the ALJ must "consider" these opinions, but rather the extent to which the ALJ must explain these

considerations in his or her opinion, or if they must be explained at all. *Id.* at *6. The Ruling states:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* In other words, the adjudicator should either include the opinion in the discussion or make certain that the discussion is well-reasoned. The latter option provides no assurance that the opinion will be explicitly addressed.

The district courts in this circuit have accordingly come to different conclusions on whether an ALJ must explicitly address "other source" opinions in the decision. *See, e.g.*, *Russell v. Comm'r of Soc. Sec.*, No. 1:13-CV-291, 2014 WL 1333262, at *9 (N.D. Ohio Mar. 31, 2014) ("District courts in this circuit vary in their interpretation of whether SSR 06-03p requires an ALJ to discuss the reasons for not crediting opinions from other sources."); *Hill v. Astrue*, No. 5:12CV-00072-R, 2013 WL 3293657, at *4 (W.D. Ky. June 28, 2013) (hereinafter *Hill I*)  (noting that SSR 06-03p "has generated some controversy among the courts within this Circuit as to the degree of explanation required in the ALJ's written decision"), *aff'd*, 2014 WL 1257948 (6th Cir. Mar. 27, 2014); *Southward v. Comm'r of Soc. Sec.*, No. 11-14208, 2012 WL 3887212, at *3 (E.D. Mich. Sept. 7, 2012) ("[D]istrict courts in this circuit have varied widely in their interpretation of whether SSR06-3p obligates an ALJ to discuss his reasons for not crediting opinions from 'other sources.'").

One group of cases relies on a close reading of the text of the regulations and the Ruling and finds that they do not include an explicit requirement to discuss "other source" opinions. *Boyer v. Comm'r of Soc. Sec.*, No. 1:12-cv-03088, 2013 WL 6568768, at *17 (N.D. Ohio Dec. 13, 2013) ("SSR 06-03p does not include 'an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from "other sources."'" (quoting *Chambers v. Astrue*, 835 F. Supp. 2d 668, 678 (S.D. Ind. 2011))); *Southward v. Comm'r of Soc. Sec.*, No 11-CV-14208, 2012 WL 3887439, at *6 (E.D. Mich. May 17, 2012) ("[T]he ALJ is not required to explain the weight given [an other source] opinion nor is the ALJ required to give reasons why her opinion was discounted."), *adopted* 2012 WL 3887212 (E.D. Mich. Sept. 7, 2012); *Hickox v. Comm'r of Soc. Sec.*, No. 1:09-cv-343, 2010 WL 3385528, at *7 (W.D. Mich. Aug. 2, 2010) ("SSR 06-3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto."), *adopted* 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011);*Castle v. Astrue*, No. 08-137-GWU, 2009 WL 1158678, at *5 (E.D. Ky. Apr. 29, 2009) (noting that the Ruling and regulations discussing the ALJ's analysis of "other source" opinions are not phrased as imperatives and distinguishing *Cruse*); *Ball v. Astrue*, No. 09-208-DLB, 2010 WL 551136, at *5 (E.D. Ky. Feb. 9, 2010) ("[T]he ALJ is not required to explain the weight given to the opinions of 'other sources,' or to give reasons why such opinion was discounted.").

Other cases come to the opposite conclusion, relying on the Sixth Circuit Court of Appeals' opinion in *Cruse v. Commissioner of Social Security*, 502 F.3d 532 (6th Cir. 2007), and a broader reading of the Ruling and regulations to find that the ALJ must discuss "other source" opinions. In *Cruse*, the court found that SSR 06-03p requires an ALJ to examine these

opinions, but declined to apply the rule retroactively. *Id.* at 541-42. Many courts have followed

suit. *See Dunmore v. Colvin*, 940 F. Supp. 2d. 677, 685 (S.D. Ohio 2013) ("[U]nder SSR 06-

03p . . . the opinions of 'non-medical sources,' like those of 'acceptable medical sources' must

be weighed and evaluated with the criteria set forth in 20 C.F.R. § 404.1527 . . . ."); *Harthun v.*

*Comm'r of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808, at *7 (July 21, 2008) (adopting

Magistrate's Report and Recommendation) (recommending reversal and remand for ALJ's

failure to explain why "other source" opinions were rejected).

     The Sixth Circuit has since reiterated the reasoning used in *Cruse*. *Hill v. Comm'r of*

*Soc. Sec.*, ___ F. App'x ___, No. 13-6101, 2014 WL 1257948, at *2 (6th Cir. Mar. 27, 2014)

(noting that an ALJ should explain their assessment of "other sources"); *Cole v. Astrue*, 661

F.3d 931, 939-40 (6th Cir. 2011) (finding that ALJ failed to "consider" an "other source"

opinion by not mentioning it in the decision). Consequently, an ALJ should discuss these

opinions, or at least provide reasoning that shows the ALJ considered the substantive elements

of the opinions. Nonetheless, there is no indication that the court in *Cruse* found that SSR 06-

03p overturned the substantial body of case law classifying these opinions as less probative

than "acceptable" sources, allowing an ALJ substantial discretion in the analysis, and absolving

the ALJ from the need to discuss every piece of evidence in the record.[5]

---

    [5] The court in *Cruse* did imply, however, that the Ruling might create tension with a portion of this case law. Before discussing the Ruling, the court cited *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997), which held that an ALJ has discretion to weigh "other source" opinions. *Cruse*, 502 F.3d at 541. The court suggested that SSR 06-03p, and not *Walters*, controlled the analysis, but nonetheless the court did not cast *Walters* into doubt and in fact repeatedly cited the case elsewhere in the opinion. *Id.* at 540, 542, 543. Moreover, the holdings are congruous: *Cruse* found that SSR 06-03p simply mandated a discussion and provided the framework of that discussion, while *Walters* and similar cases allow the ALJ to operate with considerable freedom inside of that framework. Many courts adhere to both bodies of case law. *See, e.g. Hogston v. Comm'r of Soc. Sec.*, No. 12-12626, 2013 WL 5423781, at *10 (E.D. Mich. Sept. 26, 2013) (noting that an ALJ must discuss "other sources," but that the discussion "need not be extensive" and can consist of a brief assessment

The Commissioner and many courts note that "other sources" are generally given less weight than "acceptable" sources. SSR 06-03p, 2006 WL 2329939, at * 5 ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' . . . ."); *Dunmore*, 940 F. Supp. 2d. at 685 ("[T]he regulation [20 C.F.R. § 404.1513] . . . allows the ALJ to give greater weight to 'acceptable medical sources' who are recognized as more-qualified healthcare professionals."); *Strevy v. Comm'r of Soc. Sec.*, No. 1:12-cv-634, 2013 WL 5442803, at *7 (W.D. Mich. Sept. 30, 2013) (adopting Magistrate Report and Recommendation) ("The opinions of such acceptable medical sources are entitled to greater weight than the opinion of a non-acceptable source . . . .").

Moreover, an ALJ has considerable discretion in deciding what weight to give the various factors in the analysis. *Walters*, 127 F.3d at 530 ("[T]he ALJ has the discretion to determine the appropriate weight to accord [an "other source"] opinion based on all evidence in the record . . . ."). The ALJ is under no obligation to explain each piece of evidence in the record. *Kornecky*, 167 F. App'x at 508. In short, the ALJ is not bound by any opinion evidence, except in limited circumstances, when determining the claimant's residual functions. As the Sixth Circuit has expressed, "the ALJ is charged with the responsibility of determining the [Residual Functional Capacity] based on her evaluation of the medical and non-medical evidence" and does not have "to base her RFC finding on a physician's opinion." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Thus, the record does not have to contain any opinion, from an "acceptable source" or otherwise, that the claimant can work at a

---

of the reasons behind the assessment).

level detailed in 20 C.F.R. § 404.1567 (sedentary, light, medium, heavy, very heavy), for the ALJ's decision to be supported by substantial evidence. *Id.*

In the present case, substantial evidence supports the ALJ's analysis of Ms. Rounds's opinion. Ms. Rounds is an occupational therapist, a job title not included as an "acceptable source" in the regulations. 20 C.F.R. § 404.1513(a). Therefore, her assessment in the Record constitutes an "other source" opinion that the ALJ had show that she considered in the decision. While the decision is certainly not a disquisition on Plaintiff's health, it at least covers the bare minimum required.

First, the ALJ noted that she considered all evidence "in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5, 96-6p and 06-3p." (Tr. at 16.) In a similar context, the Sixth Circuit found such statements to approach the minimum consideration needed to satisfy the regulations. *White v. Comm'r of Soc. Sec.* 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered S.S.R. 97-7p, which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so," and therefore the ALJ's credibility determination was upheld.) In any case, the ALJ went beyond this, describing in detail the limitations Ms. Rounds set out. (Tr. at 17.) She further noted that Dr. Hough, Plaintiff's treating physician, endorsed a portion of Ms. Rounds's report that excluded the judgment that Plaintiff was incapable of work and needed a sit-stand

option.[6] (*Id.*) She also explained that while Ms. Rounds concluded Plaintiff could not work, she also laid out limitations for any work he might do. (*Id.*)

The ALJ then incorporated many of Ms. Rounds's suggestions into her RFC determination. The sit-stand option at will was included as a limitation supported by Ms. Rounds's opinion. (Tr. at 18.) The RFC also reflects the opinion that Plaintiff should not climb ladders, but could bend and occasionally push or pull with the lower extremities. (Tr. at 15.) The ALJ went further than Ms. Rounds in limiting his gross and fine manipulation with his right arm. (*Id.*) Ms. Rounds tested Plaintiff's grip strength with a Jamar dynamometer, which showed that he was within normal limits and his right hand was stronger than his left. (Tr. at 289.) Nonetheless, the ALJ credited Plaintiff's subjective complaints of numbness in his right arm and limited the RFC accordingly. (Tr. at 18.)

These limitations in the RFC provide strong proof that the ALJ considered Ms. Rounds's opinion along the factors laid out in 20 C.F.R. § 404.1527©. Specifically, the decision notes that Ms. Rounds conducted "function testing" on Plaintiff, corresponding roughly to the "Examining relationship" factor. (Tr. at 18); 20 C.F.R. § 404.1527(c)(1). The ALJ questioned the evidentiary basis for the opinion, (Tr. at 18), which touches upon the next three factors in the regulation: the nature of the relationship; supportability; and consistency. 20 C.F.R. § 404.1527(c)(2)-(4). The record lacks any indication of the nature and length of the relationship. Also, Ms. Rounds states that Plaintiff functions below a sedentary level, (Tr. at

_____

[6] It is not entirely clear what specific papers Dr. Hough endorsed. He signed the form listing the limitations, which did not include Ms. Rounds's conclusions regarding Plaintiff's inability to work and need for a sit-stand option. (Tr. at 294.) Both the Commissioner and the ALJ assert that the only thing Dr. Hough approved was this form. (Doc. 14 at 7; Tr. at 17-18.) Additionally, the Record contains two copies of the document, only one of which is signed by Dr. Hough, suggesting he reviewed only that sheet. (Tr. at 293-94.)

292), which means he should not lift more than ten pounds at a time. 20 C.F.R. § 404.1567(a).

Yet he lifted and carried ten pounds during the testing, despite subjective complaints of pain,

and her Manual Muscle Testing revealed normal strength except for his left shoulder and hip.

(Tr. at 289, 291.) He also reported frequently lifting similar weight at his previous job, which

ended two years prior to the hearing. (Tr. at 20, 152, 183). The ALJ took any strength

limitations into consideration by restricting Plaintiff's push and pull movements. (Tr. 15.) The

decision also noticed the slight inconsistency in Ms. Rounds's declaration that Plaintiff was

incapable of work, but would need certain limitations if he did work. (Tr. at 17.) Finally, the

ALJ properly observed that Ms. Rounds was not an "acceptable" source, thus implicating her

specialization. (Tr. at 18.)

The decision's main shortcoming is its lack of clarity in spelling out the ALJ's reasoning

process. But it fulfills the regulatory requirements; that is, it shows a reasoned consideration of

Ms. Rounds's opinion. Any trivial deficiencies in the decision represent harmless errors that

would not change the outcome on remand. *Hill I*, 2013 WL 3293657, at *4 (finding that any

failure to discuss "other source" opinion was harmless error that would not have likely changed

the ALJ's decision); *Miller v. Comm'r of Soc. Sec.*, No. 08-12027, 2009 WL 997312, at *3

(E.D. Mich. Apr. 14, 2009) (same). Plaintiff fails to show how, upon remand, forcing the ALJ

to scribble a few more lines extending her analysis would lead to a different result. While

failure to follow a procedural rule is not harmless merely because the claimant lacks a strong

case anyway, *Wilson*, 378 F.3d at 546 (citing *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41

(D.C. Cir. 1977)), courts have deemed as harmless an ALJ's failures to unerringly follow

regulations and agency rulings where substantial evidence supported the ALJ's decision.

*Heston*, 245 F.3d at 535-36 (holding that no remand was necessary where ALJ failed to cite a medical report by claimant's treating physician); *Masters v. Astrue*, No. 07-123-JBC, 2008 WL 4082965, at *2 (E.D. Ky. Aug. 29, 2008) (holding that no remand was required where ALJ did not "strictly abide" by an agency ruling). Because the ALJ here appropriately considered the opinion and was supported by substantial evidence, any alleged error is harmless and remand is unnecessary.

### b.     Credibility Determination and RFC Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. § 404.1529 and SSR 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the

severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(I)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

26

     (v)       Treatment, other than medication, . . . received for relief of . . . pain;

     (vi)      Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527©; SSR 96-7p, 1996 WL at *5.

The claimant's work history is another factor for the ALJ to consider. 20 C.F.R. § 404.1529(c)(3). However, failure to take every factor into account in the written decision does not require remand. *Ausbrooks v. Astrue*, No. 12-12144, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013) ("An ALJ, however, is not required to explicitly discuss every § 404.1529(c)(3) factor in [the credibility] assessment."); *Lang v. Comm'r of Soc. Sec.*, No. 11-cv-12271, 2012 WL 3224137, at *13 (E.D. Mich. Mar. 29, 2012) ("[A]n ALJ need not explicitly discuss each 20 C.F.R. § 404.1529(c)(3) factor in his narrative."); *McCoy v. Astrue*, No. 09-11897, 2010 WL 3766473, at *6 (E.D. Mich. Sept. 21, 2010) ("There is no requirement that an ALJ make a detailed, on the record finding of every single factor describe in SSR 96-7p . . . ."); *Pinkston v. Astrue*, No. 3:07CV341-J, 2008 WL 4386829, at *3 (W.D. Ky. Sept. 23, 2008) ("This court is certainly not suggesting that the law requires the ALJ to explicitly address every possible factor bearing on credibility in every case . . . .").

In the present case, the ALJ found Plaintiff "partially credible." (Tr. at 17.) In particular, the ALJ acknowledged that the "claimant's activities of daily living are no doubt limited." (*Id.*) Her credence in his subjective complaints was reflected in the RFC, which placed restrictions on his gross and fine manipulation, limited him to unskilled work, and added a sit-stand option at will. (Tr. at 18.) She also described the pertinent parts of Plaintiff's work history. (Tr. at 16.)

27

She noted Plaintiff's prior jobs automobile repair businesses. (*Id.*) This matches the entire history Plaintiff shared in his applications and forms, (Tr. at 151-53, 160, 181-83, 223), and the history his representative provided, (Tr. at 232), although his earnings records listed earlier work. (Tr. at 134-45.) The ALJ obtained the same truncated information from Plaintiff through questioning at the hearing. (Tr. at 41-43, 57.)

Substantial evidence supports the three reasons the ALJ provided for her credibility finding. (Tr. at 17.) First, she observed that "routine and conservative" treatments had lessened the Plaintiff's pain and other symptoms. (*Id.*) The Record substantiates this observation, especially Plaintiff's repeated admissions that the treatments helped with varying but consistent success, (Tr. at 48-50, 56, 63, 267, 271, 287), and the treatment regimen's heavy, if not total reliance on medication.[7] (Tr. at 203, 206, 221-22, 232, 237.) In fact, in January, 2011, he told his physician that medication, heat, and massage decreased his pain by half. (Tr. at 271.)

The ALJ bolstered her credibility analysis with two additional observations. She noted that Plaintiff was "generally independent in personal care." (Tr. at 17.) While he reported needing limited assistance with dressing, (Tr. at 52), he consistently stated that he could handle his personal care, including both physical tasks and practical responsibilities such as overseeing his finances. (Tr. at 167-68, 268.) The ALJ's final rationale is less persuasive, and perhaps

---

[7] It appears that Plaintiff also had epidural injections, but the Record contains no reports from these treatments and no substantial evidence of their frequency. (Tr. at 48-49, 63, 201-02.) In his disability report appeal form, he listed only one injection treatment, (Tr. at 202), and one medical report stated he had an injection around 2001. (Tr. at 272.) He also claimed to do physical therapy and traction, another conservative approach. (Tr. at 46-47, 49, 62-63.) Finally, a few documents referenced a neck surgery performed many years ago, indirectly related to his current health issues. (Tr. at 44-45, 273, 287.) Part of the reason he was not a surgical candidate at present was due to the condition of his bones. (Tr. at 233.)

mischaracterizes the evidence, but still finds some support in the Record. She questioned his credibility because he could occasionally shop, drive, read, attend medical appointments, and visit with family. (Tr. at 17.) His testimony and other statements reveal a slightly different picture: he only shopped when he was already out of the house for a doctor's appointment, (Tr. at 58); he never drove and did not keep his license, though he would ride in the car, (Tr. at 40); he rarely read, (Tr. at 58); and his family visits usually occurred at his house (*Id.*) Nonetheless, the ALJ's statement is generally accurate and consistent with the evidence and therefore no "compelling reason" exists to modify the decision. *Sims*, 406 F. App'x at 981.

I therefore suggest that the ALJ's findings that Plaintiff was not fully credible, that he could perform a limited range of light work, and that he is not disabled are all supported by substantial evidence and should not be disturbed.

### 3.   Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins.*

*Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984

(6th Cir. 2005). The parties are advised that making some objections, but failing to raise others,

will not preserve all the objections a party may have to this Report and Recommendation.

*McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich.

LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue

contained within the objections.

Date:  May 13, 2014                          /S PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date
and served upon counsel of record via the Court's ECF System.

Date:  May 13, 2014                          By   S/Alex Gallucci
                                             Law Clerk to Magistrate Judge Binder