UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T<small>HOMAS</small> P<small>RINCE</small>,

     Plaintiff,

v.

C<small>OMMISSIONER OF</small> S<small>OCIAL</small> S<small>ECURITY</small>,

     Defendant.

_____/

C<small>ASE</small> N<small>O</small>. 13-12055

S<small>ENIOR</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small>
J<small>UDGE</small> A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AG</small>. J<small>UDGE</small> P<small>ATRICIA</small> T. M<small>ORRIS</small>

### **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [13], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14], AND REMANDING FOR FURTHER CONSIDERATION**

Before the Court is the Magistrate Judge's Report and Recommendation [15], entered on May 13, 2014, recommending that Plaintiff's Motion for Summary Judgment [13] be denied, and that Defendant's Motion for Summary Judgment [14] be granted.  Plaintiff filed Objections [16] on May 27, 2014.  No response was filed by Defendant.

For the reasons stated below, Plaintiff's Motion for Summary Judgment [13] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment [14] is DENIED.  The matter is REMANDED to the ALJ for further consideration.

1

## I. Procedural Background

On September 30, 2010, Plaintiff Prince filed an application for Disability Insurance Benefits, alleging a disability onset date of April 14, 2010. His application was denied on March 18, 2011. A hearing was held on February 16, 2012, before Administrative Law Judge (ALJ) Jessica Inouye. Plaintiff Prince testified at the hearing. Vocational expert (VE) Judith Gasco also testified at the hearing.

On March 2, 2012, the ALJ issued a decision finding that Plaintiff was not disabled from April 2, 2010 through March 2, 2012, the date of the decision. In accordance with testimony from the VE, the ALJ found that while Plaintiff was unable to perform past relevant work, his residual functional capacity (RFC) still allowed him to perform a significant number of "light work" unskilled jobs in the region.

On March 26, 2013, the Appeals Council denied review of the ALJ's ruling. On May 9, 2013, Plaintiff filed for review of the ALJ's decision before this Court.

On October 9, 2013, Plaintiff filed its Motion for Summary [13], and on November 6, 2013 Defendant filed its Motion for Summary Judgment [14]. The Magistrate Judge issued the Report and Recommendation [15] on May 13, 2014. Defendant filed Objections [16] on May 27, 2014.

## II. Factual Background

The R&R [15] contains an accurate record of the factual background of this case. The Court adopts the factual background as set out in the R&R [15], with the following additions.

While working for his mother-in-law for the approximately six years prior to the onset of his disability, Plaintiff testified that he had help from family and friends to do any lifting or other strenuous work that he was not able to do. At the time Plaintiff stopped working in 2010, he testified that his pain was progressively worsening, limiting his ability to work to two or three hour days every couple of days. Prior to working for his mother-in-law, Plaintiff worked for S&S Construction, where he reported that he was missing days and working shorter hours because of his pain. During his hearing, Plaintiff stated that he was only able to sleep about four hours a night due to pain.

In an early visit to Dr. Hough in August 2010, Plaintiff reported that his pain had improved from eight to nine out of ten to seven to eight out of ten. Plaintiff first visited pain management specialist Larisa Bruma, M.D. in January 2011. As early as this visit, Dr. Bruma noted that Plaintiff was taking Ambien. During a second visit that month, Plaintiff reported that his pain was improving and 50% better with medication, heat, and massage, but that he had "flare-ups" in pain during activities, standing, or sitting.

Later, in August 2011, Plaintiff reported that his pain had increased from four out of ten to six out of ten. During that same visit, Dr. Bruma prescribed trazodone for sleep hygiene because Plaintiff's insurance would not cover Ambien. Plaintiff later returned to Dr. Bruma in December 2011 and reported that his pain was "pretty leveled" on a scale of four out of ten. After the functional assessment performed by Barbara Rounds, an occupational therapist, in January 2012, Plaintiff's pain level was reported as eight out of ten. Rounds wrote that in a follow-up call between herself and Plaintiff's wife it was said that Plaintiff needed to take rest breaks during the trip home from the assessment due to pain, and that he did not sleep well that night. During the hearing, Plaintiff testified that medication and treatment were helping alleviate his pain, but also noted that he spent most of the day lying down, with legs propped up to relieve pain.

### III. Standard of Review

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c).

A motion for summary judgment is granted under Fed. R. Civ. P. 56(c) when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1987). Facts and inferences must be

viewed in the light most favorable to the non-moving party. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party must present "specific facts showing that there is a genuine issue for trial" that demonstrates that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,Inc.*, 8 F.3d 335, 39-40 (6th Cir. 1993) (internal citations omitted).

In reviewing an ALJ's decisions, 42 U.S.C. §405(g) provides that the ALJ's "factual findings are conclusive if supported by substantive evidence." *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.d 270, 273 (6th Cir. 1997)). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)) (internal quotation marks omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In order to determine "whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record

taken as a whole and must take into account whatever in the record fairly detracts from its weight." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). In doing so, the court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Hogston v. Comm'r of Soc. Sec.*, No. 12-12626, 2013 WL 5423781, at *11 (E.D. Mich. Sept. 26, 2013) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)).

## IV. Analysis

In the Report and Recommendation [15], the Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment [13] be denied and that Defendant's Motion for Summary Judgment [14] be granted. The Magistrate Judge found that substantial evidence supported the ALJ's determination that Plaintiff is not disabled. Accordingly, the Report and Recommendation [15] recommends this Court affirm the decision of the Social Security Commissioner.

Plaintiff Prince now makes two objections to the Report and Recommendation [15]. First, Plaintiff argues that the ALJ did not give enough weight to the "other source" evidence provided by occupational therapist Rounds. He claims that the ALJ's lack of explanation of the ALJ's assessment of this evidence provides an insufficient basis for the court to review the agency's decision. Plaintiff also contends that the Magistrate Judge's discussion of the

ALJ's reasoning for giving little weight to the "other source" evidence was insufficient under the *Chenery* rule.[1]  Second, Plaintiff alleges that the ALJ's improper weighing of Rounds's opinion was neither trivial nor harmless, as found by the Magistrate Judge.

After reviewing the record, the Report and Recommendation [15], and Plaintiff's objections [16], this Court agrees that the ALJ gave an insufficient explanation of her analysis of Rounds's report.  This Court also finds that the ALJ gave an insufficient explanation for her treatment of Dr. Hough's opinion.  In addition, the ALJ's analysis of Plaintiff's subjective reports of pain and the characterization of Rounds's report as conclusory are not supported by the record.  These errors are not trivial, and thus the matter is remanded to the ALJ for further consideration in accordance with this opinion.

---

[1] Plaintiff's reliance on the *Chenery* rule is misplaced.  The *Chenery* rule (or rules) refers to the Supreme Court's holding in two cases between the Securities and Exchange Commission and the Chenery Corporation - *Chenery I* and *Chenery II*.  In *Chenery I*, the Court held that a court will only review an agency's decision based on the reasons the agency provides for its action and that post hoc justifications will not be considered.  *See Sec.& Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943).  In *Chenery II*, the Court held that administrative agencies may use their own discretion when choosing procedures for creating rules.  *See Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 203 (1947).  These rules need not be applied here.  Instead, the issue now before the Court is whether the ALJ's treatment of the record is insufficient for the court to understand and review the ALJ's rationale.

### A. *Opinion of Treating Physician Hough*

The ALJ states that she gave "some weight" to Plaintiff's treating physician, Dr. Joseph Hough. However, the ALJ's discussion of opinion evidence provided by Dr. Hough is unclear to the extent that the Court cannot determine what evidence she included in her weighing of Dr. Hough's opinion. The ALJ notes that Dr. Hough signed off on a portion of Rounds's report, and describes his analysis as appearing to "rest on subjective reports of symptoms and limitations provided by the claimant that are not supported by the medical evidence of the record as a whole." It is also not explained if the reports the ALJ refers to are Plaintiff's personal reports of pain, or all or a portion of Rounds's report.

If the ALJ is referring to Rounds's report or the portion of it which Dr. Hough signed, this description would be inaccurate.  Occupational therapist Rounds's report is quite in-depth and rests on more than just Plaintiff's subjective complaints.  If the ALJ is referring to Plaintiff's subjective reports of pain, then Plaintiff's complaints also appear to be supported by the record.  In addition, the ALJ's general statement that the subjective reports of pain are not supported by the record "as a whole" does not identify which portions of the record are in conflict. *See Hogston v. Comm'r of Soc. Sec.*, No. 12-12626, 2013 WL 5423781, at *11 (E.D. Mich. Sept. 26, 2013) ("[e]laboration on what inconsistencies the ALJ relied is lacking and thus evades adequate judicial review . . . without elaboration, there

8

is no way to know whether the ALJ disregarded this portion of [the doctor's] treatment records, or instead found inconsistency significant enough to discredit [the doctor's] opinion.").

Given that Dr. Hough is Plaintiff's treating physician, whose opinion should generally be given greater weight, this gap in the record makes it particularly difficult for the Court to review whether the ALJ's overall analysis of Plaintiff's application is supported by substantial evidence. Even if an ALJ does not find that a treating physician's opinion is entitled to controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Specifically, the "treating source rule" requires that the ALJ give "good reasons" for the weight given to a treating source opinion. 20 C.F.R. § 404.1527(c)(2). Thus, because the ALJ's treatment of Dr. Hough's opinion is insufficient for the Court to understand why and in what way she decided to accord it only "some weight," it is necessary to remand to the ALJ for further explanation.

 B. *Report of Occupational Therapist Rounds*

The ALJ describes Rounds's functional assessment report as "quite conclusory, providing little explanation of the evidence relied on in forming [the] opinion." This description of Rounds's report is not supported by substantial

evidence. Instead, the assessment provided by Rounds is quite detailed and provides substantial support for the recommendations contained within. Because it appears that as a result of her mischaracterization of Rounds's report the ALJ gave it little weight in her overall analysis, the Court directs the ALJ to revisit her overall analysis of Plaintiff's application in light of the Court's analysis of the report provided below.

When assessing an individual's impairment, the Social Security Administration (SSA) distinguishes between "acceptable medical sources," such as licensed physicians, and "other sources" which include physicians' assistants, therapists, and medical sources not listed as "acceptable medical sources." 20 C.F.R. § 404.1513. As an occupational therapist, Rounds's opinions are considered "other source" evidence. In 2006, the SSA issued ruling SSR 06-03p which sought to clarify its policy in regard to assessing this "other source" evidence. The ruling provided that the factors enumerated in 20 C.F.R. § 404.1527(c), which explains how medical source opinions are evaluated in determining disability status, can also be applied to "other source" opinions. These six factors are the examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factors. The Sixth Circuit Court has held that, "[a]n ALJ must consider other-source opinions and 'generally should

explain the weight given to opinions for these 'other sources[.]'" *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 550 (6th Cir. 2014)(quoting SSR 06-03p).

In regard to the examining and treatment relationship factors of 20 C.F.R. § 404.1527(c), Plaintiff's counsel noted during the hearing that the assessment by Rounds was completed because Dr. Hough would not provide any restrictions until he had a functional capacity evaluation. Likewise, there is only mention of one visit to Rounds's office in the record. This suggests Plaintiff met with Rounds only once, and that the assessment was brought about by referral from Plaintiff's treating physician. In addition, at the beginning of Rounds's report, she enumerates the two reasons Plaintiff was referred to her office: to assess the client's physical status and safe functional capabilities as related to the physical demands of work, and to help define the client's residual capacities and determine his ability to engage in substantial gainful activity on a regular and constant basis. Thus, the record contained evidence by which the ALJ could evaluate the first two factors, yet they were not addressed in her decision.

In addition, the consistency of Rounds's report with the record as a whole is not mentioned in the ALJ decision. The Report and Recommendation [15] contends that the ALJ, by noting that Rounds "opined that the claimant was not able to . . . sustain full-time employment but if he did so, he would have limitations," showed a recognition by the ALJ of a "slight inconsistency in

11

Rounds's declaration that Plaintiff was incapable of work, but would need certain limitations if he did work." This is misconstruing Rounds's report. What is actually written under the "Tolerance for Sustained Work Activity" section of the report is the following:

> The client does **NOT** appear capable of engaging in full-time sustained employment. If the client were required to work 40 hours per week, 8 hours per day in a competitive work environment he would most likely have serious limitations as to pace and concentration & [sic] need a sit-stand-rest option as symptoms dictate.

(emphasis in original). Rather than being inconsistent, it actually appears that Rounds was merely providing her interpretation of what limitations Plaintiff would require if her impression of his inability to work was not accepted. Representing this rather thorough analysis as an inconsistency is inaccurate. Further, before her own assessment was given, Rounds's report reviewed the medical history, daily activities, and employment information of Plaintiff, showing that she was familiar with Plaintiff's medical record.

In regard to the specialization factor, the ALJ notes that Rounds is a registered occupational therapist (OTR). An OTR is responsible for assessing patients' needs and creating treatment plans. The Bureau of Labor Statistics notes that a typical duty of an occupational therapist is to "[a]ssess and record patients' activities and progress for patient evaluations, for billing, and for reporting to physicians and other healthcare providers." BUREAU OF LABOR STATS., U.S. DEP'T

12

OF LABOR, OCCUPATIONAL OUTLOOK HANDBOOK (2014-15 ed.), *available at* http://www.bls.gov/ooh/healthcare/occupational-therapists.htm#tab-2.

Finally, the main concern the ALJ appears to have with Rounds's report is its supportability. However, the report is quite detailed and supported by substantial explanation of Rounds's observations and Plaintiff's demonstrated capabilities. Rounds's functional assessment provides Plaintiff's heart rate during each exercise, his pain rating on a scale of zero to ten, reasons for termination, such as "[p]rogressive and intense low back and left leg pain," and other observational notes, including "client was noted to frequently shift his weight" and "client appeared to be in moderate distress and presented with significant shortness of breath." To compare, in *Southward* the court noted that the nurse-practitioner's opinion was:

> . . . nothing more than a form on which she checked boxes indicating Plaintiff's level of impairment. It is devoid of any discussion of the observations or medical evidence that led [the nurse-practitioner] to her assessments; it does not indicate how long and how frequently [the nurse-practitioner] had been treating Plaintiff; and it appears to be based entirely on Plaintiff's subjective description of her limitations.

*Southward v. Comm'r of Soc. Sec.*, No. 11-14208, 2012 WL 3887212, at *6.

The ALJ's discussion of Rounds's report does not take note of many of the distinctions and details the report includes. For instance, the ALJ states that Rounds's report showed that Plaintiff would be limited to lifting or carrying 10 pounds. The RFC similarly assigns Plaintiff a capability of light work, defined in

13

§ 404.1567(b) as including the capability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." However, in Rounds's report, the lifting assessment was only done from waist to waist. Lifting from floor to waist was deemed unsafe by Rounds. It was noted for the overhead lifting test that Plaintiff had insufficient AROM in the left shoulder and decreased spinal ability. Rounds also noted under reasons for termination in the waist to waist lifting exercise that there was left leg weakness and instability, increased antalgia, and complaints of intense pain with consistent pain behaviors.

In summary, the ALJ's analysis of the evidence and opinions offered by Rounds is not supported by substantial evidence. In regard to consistency, specialization, and supportability, the record contains evidence that would prompt giving additional weight to Rounds's report, contrary to how it appears the report was treated by the ALJ. The Report and Recommendation's [15] contention that the ALJ's decision shows a reasoned consideration of Round's opinion is either not supported by the gaps in the ALJ's decision or disproved by portions of the report the Court has identified above.

C. *Plaintiff's Credibility*

The ALJ states that she found Plaintiff's allegations partially "credible to the extent that they are consistent with the limitations in the residual functional capacity but beyond that, the allegations are given little weight." This statement,

along with the ALJ's RFC determination that Plaintiff was capable of light work, suggests that Plaintiff's reports of pain were given very little weight in determining his capabilities. Yet, there are several mischaracterizations or gaps in the ALJ's analysis, and Plaintiff's reports of pain do seem to be reasonable and supported by the record as a whole.

There is a two-step process for evaluating subjective symptoms, such as pain. SSR 96-7p explains that the first step is to determine if there is an underlying medically determinable physical impairment that can reasonably be expected to produce the plaintiff's pain. Once such an underlying impairment has been identified, the next step is to evaluate the extent to which the plaintiff's pain will affect his or her ability to work. During this second step, to the extent a plaintiff's reports of pain are not supported by the objective medical evidence, the ALJ must make a finding on the plaintiff's credibility based on the record as a whole. 20 C.F.R. § 404.1529(c); SSR 96-7p. The factors to be considered when assessing an individual's credibility are provided in SSR 96-7p:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Here, a number of questions have been raised in regard to the ALJ's treatment of Plaintiff's subjective complaints. In regard to Plaintiff's daily activities, the first factor, the ALJ accurately states that Plaintiff is generally independent in his personal care, but that his daily activities are limited. However, as the Report and Recommendation [15] notes, the ALJ slightly mischaracterizes Plaintiff's statements by stating that Plaintiff acknowledges that he can drive, read, go shopping, and visit with family. This language in the ALJ's decision suggests she used this evidence to question Plaintiff's overall credibility. However, whereas the ALJ stated Plaintiff could drive, during the hearing Plaintiff testified that that he did not keep a driver's license, and had stopped driving in June 2011. He testified that he had never read often, and if he tried to read now it would hurt to hold a book out in front of him. Plaintiff reported that he did visit with his family, but that they came to his house to see him. He goes grocery shopping only when he is already out of the house for a doctor's appointment.

In regard to factors five and six, the ALJ states that Plaintiff's treatment "has been routine and conservative, which has generally been successful in controlling his symptoms." She then cites to the portion of Dr. Bruma's medical records

16

which noted that Plaintiff's pain had improved by fifty percent. However, it is not clear to this Court from the medical record to what extent Plaintiff's treatment has been effective in controlling his pain as Plaintiff's reported pain levels fluctuate throughout the record. Finally, the statement that Plaintiff's treatment has been "routine and conservative" is not defined, nor is it explained how this characterization of Plaintiff's treatment is factored into the overall analysis.

Although the ALJ in this case has stated that she considered the relevant regulations, the Court has identified instances that support the conclusion that the ALJ has failed to properly weigh the factors in the associated regulations. As such, it is necessary for the ALJ to provide further explanation of her reasoning, and, if merited, reconsider her assessment of Plaintiff's credibility. *See Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

    D.    *Harmless Error*

The Report and Recommendation [15] notes that the ALJ's "decision's main shortcoming is its lack of clarity in spelling out the ALJ's reasoning process," yet its description of this shortcoming as a harmless error is inaccurate. The VE's testimony provides reason to believe that the ALJ's decision may have come out differently had she accorded greater weight to Rounds's report, Dr. Hough's opinion, or Plaintiff's own allegations of pain. After providing a number of hypotheticals, the ALJ asked the vocational expert if there would be jobs available

in the regional or national economy for a person of Plaintiff's age, education, and work experience.  In response to the third hypothetical, which presented a situation in which Plaintiff would have to lie down in three one-hour increments during an eight-hour workday, the vocational expert responded that there would be no jobs available.  The fourth hypothetical asked if there would be positions available if Plaintiff could only work four hours per day and was limited to a range of sedentary work.  The vocational expert responded that there would be no positions available.  *See cf. Hill v. Astrue*, no. 5:12CV-00072-R, 2013 WL 3293657, at *4 (W.D. Ky. June 28, 2013) (holding "even if the ALJ technically erred in failing to address each regulatory factors [sic], any error was harmless inasmuch as the Plaintiff has not shown a reasonable probability that an explicit analysis would have resulted in a [different] finding.").

    Regardless of whether the ALJ's errors in this case were harmless, it is difficult for the Court to determine whether this would have made a difference in the outcome of the case without further explanation from the ALJ.  Specifically, the ALJ failed to provide a sufficient explanation of the weight given to Dr. Hough's opinion, as well as the ALJ's analysis of Rounds's report and Plaintiff's subjective complaints does not appear to be supported by the record.  Thus, remand is appropriate so that the ALJ can adequately explain her decision.

## V. Conclusion

For the reasons stated above, the matter is REMANDED for further explanation, the Plaintiff's Motion for Summary Judgment [13] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment [14] is DENIED.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [13] is **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [14] is **DENIED.**

**IT IS FURTHER ORDERED** that the matter is **REMANDED** for further consideration.

**SO ORDERED**.

s/Arthur J. Tarnow
ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 16, 2014